**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 18-7162**

# In the United States Court of Appeals for the District of Columbia Circuit

───────────────

WHOLE FOODS MARKET GROUP, INC.,
*Defendant-Appellant,*

v.

MICHAEL MOLOCK, et al.,
*Plaintiffs-Appellees.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 1:16-CV-02483-APM (THE HON. AMIT P. MEHTA)

───────────────

## CORRECTED BRIEF OF PLAINTIFFS-APPELLEES

───────────────

SALVATORE J. ZAMBRI
CHRISTOPHER J. REGAN
REGAN ZAMBRI LONG PLLC
1919 M Street, NW, Suite 350
Washington, DC 20036
(202) 463-3030
*szambri@reganfirm.com*

MATTHEW W.H. WESSLER
JONATHAN E. TAYLOR
DANIEL WILF-TOWNSEND
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
(202) 888-7792 (fax)
*matt@guptawessler.com*

April 2, 2019                    *Counsel for Plaintiffs-Appellees*

## COMBINED CERTIFICATES

### Certificate as to Parties, Rulings, and Related Cases

As required by Circuit Rule 28(a)(1), undersigned counsel for plaintiffs-appellees hereby provide the following information:

### I.     Parties, Intervenors, and *Amici* Appearing Below

The parties, intervenors, and *amici* who appeared before the U.S. District Court were:

1.     Michael Molock, *Plaintiff*.

2.     Randal Kuczor, *Plaintiff*.

3.     Carl Bowens, *Plaintiff*.

4.     Jon Pace, *Plaintiff*.

5.     Sarah Strickland, *Plaintiff*.

6.     Jose Fuentes, *Plaintiff*.

7.     Christopher Milner, *Plaintiff*.

8.     Whole Foods Market, Inc., *Defendant*.

9.     Whole Foods Market Group, Inc., *Defendant*.

### II.     Parties and *Amici* Appearing in this Court

Except for the following, all parties, intervenors, and *amici* appearing in this Court are listed in the Brief of Appellant Whole Foods Market Group, Inc.:

1.   The Chamber of Commerce of the United States of America, *amicus curiae*.

2.   The Business Roundtable, *amicus curiae*.

i

3. Washington Legal Foundation, *amicus curiae*.

## III.   Rulings under Review

References to rulings at issue appear in the Brief of Appellant Whole Foods Market Group, Inc.

## IV.   Related Cases

This case has never been under review before this Court or any other Court. A related case—*Victor Vasquez, et al. v. Whole Foods Mkt. Grp., Inc.*, Case No. 17-CV-00112-APM—is currently pending in the United States District Court for the District of Columbia before the Honorable Judge Amit P. Mehta.

Respectfully submitted,

*/s/ Matthew W.H. Wessler*

SALVATORE J. ZAMBRI
CHRISTOPHER J. REGAN
REGAN ZAMBRI LONG PLLC
1919 M Street, NW, Suite 350
Washington, DC 20036
(202) 463-3030
*szambri@reganfirm.com*

MATTHEW W.H. WESSLER
JONATHAN E. TAYLOR
DANIEL WILF-TOWNSEND
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
(202) 888-7792 (fax)
*matt@guptawessler.com*

*Counsel for Plaintiffs-Appellees*

April 2, 2019

# TABLE OF CONTENTS

Table of authorities ................................................................................. v

Introduction .......................................................................................... 1

Statement of jurisdiction ....................................................................... 4

Statement of the issues ......................................................................... 4

Statutes and regulations ........................................................................ 5

Statement of the case ............................................................................ 5

    I.    Factual background ...................................................... 5

    II.   Procedural background .................................................. 8

Standard of review ............................................................................... 10

Summary of argument .......................................................................... 11

Argument ............................................................................................ 14

    I.    *Bristol-Myers* applied settled personal-jurisdiction principles to mass-tort claims in state court and affords no basis to create a new rule for federal class actions. ...................................... 14

    II.   Unnamed class members have never been—and should not be—considered "parties" for personal-jurisdiction purposes. ............ 18

    III.  The Constitution permits, and the federal rules authorize, a federal court's adjudication of a class claim if the defendant was validly served and the class satisfies Rule 23. ..................................... 26

    IV.  At a minimum, personal jurisdiction as to the claims of unnamed class members is not required before certification is sought. ......................................................................... 34

Conclusion .......................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Policy Group, LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ......................................................... 25

*Agostini v. Felton*,
    521 U.S. 203 (1997) ......................................................... 18

*Al Haj v. Pfizer Inc.*,
    338 F. Supp. 3d 815 (N.D. Ill. 2018) ......................................................... 18

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ......................................................... 19, 31, 33

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................... 32, 34

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
    568 U.S. 455 (2013) ......................................................... 23

\* *Arrowsmith v. United Press International*,
    320 F.2d 219 (2d Cir. 1963) ......................................................... 13, 28, 29, 30, 33

*Bally Gaming, Inc. v. Kappos*,
    789 F. Supp. 2d 41 (D.D.C. 2011) ......................................................... 28

*Biffar v. Pinnacle Foods Group, LLC*,
    No. 16-873, 2016 WL 7429130 (S.D. Ill. Dec. 22, 2016) ......................................................... 37

*Bolling v. Sharpe*,
    347 U.S. 497 (1954) ......................................................... 30

\* *Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017) ......................................................... 2, 3, 5, 11, 12, 14, 15, 16, 17, 24, 25

*Campbell v. Freshbev LLC*,
    322 F. Supp. 3d 330 (E.D.N.Y. 2018) ......................................................... 37

*Authorities upon which we chiefly rely are marked with asterisks.*

*Chernus v. Logitech, Inc.,*
No. 17-673, 2018 WL 1981481 (D.N.J. Apr. 27, 2018) ................................................ 37

*Crane v. Carr,*
814 F.2d 758 (D.C. Cir. 1987) ................................................ 28

* *Devlin v. Scardelletti,*
536 U.S. 1 (2002) ........................................ 11, 12, 18, 19, 20, 21, 22, 23

*Freiman v. Lazur,*
925 F. Supp. 14 (D.D.C. 1996) ................................................ 29

*Gasser v. Kiss My Face, LLC,*
No. 17-cv-1675, 2018 WL 4538729 (N.D. Cal. Sept. 21, 2018) ................................ 37

*Gibson v. Chrysler Corp.,*
261 F.3d 927 (9th Cir. 2001) ................................................ 30

*Gilda Marx, Inc. v. Wildwood Exercise, Inc.,*
85 F.3d 675 (D.C. Cir. 1996) ................................................ 39

*Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.,*
623 F.2d 375 (5th Cir. 1980) ................................................ 30

*Gunnells v. Healthplan Services, Inc.,*
348 F.3d 417 (4th Cir. 2003) ................................................ 21

*Hansberry v. Lee,*
311 U.S. 32 (1940) ................................................ 11, 21

*Hanson v. Denckla,*
357 U.S. 235 (1958) ................................................ 25

*Helmer v. Doletskaya,*
393 F.3d 201 (D.C. Cir. 2004) ................................................ 28

*In re Bemis Co.,*
279 F.3d 419 (7th Cir. 2002) ................................................ 38

*In re Checking Account Overdraft Litigation,*
780 F.3d 1031 (11th Cir. 2015) ................................................ 36

*In re Deepwater Horizon,*
  739 F.3d 790 (5th Cir. 2014) .............................................................. 25

*ISI International, Inc. v. Borden Ladner Gervais LLP,*
  256 F.3d 548 (7th Cir. 2001), *as amended* (July 2, 2001) ........................... 27

*Jones v. Depuy Synthes Products, Inc.,*
  — F.R.D. —, No. 17-cv-1778, 2018 WL 6431013 (N.D. Ala. Nov. 20, 2018) .......... 37

*Kennedy v. Bowser,*
  843 F.3d 529 (D.C. Cir. 2016) ........................................................ 4, 35

*Knotts v. Nissan North America, Inc.,*
  346 F. Supp. 3d 1310 (D. Minn. 2018) ...................................... 22, 24, 32

*Koby v. ARS National Services, Inc.,*
  846 F.3d 1071 (9th Cir. 2017) .......................................................... 18

*Koehler v. Bank of Bermuda Ltd.,*
  101 F.3d 863 (2d Cir. 1996) ............................................................ 38

*Lightfoot v. Cendant Mortgage Corp.,*
  137 S. Ct. 553 (2017) ................................................................... 18

*Livnat v. Palestinian Authority,*
  851 F.3d 45 (D.C. Cir. 2017) .................................................. 13, 14, 26, 27

*Macy v. GC Services Limited Patnership,*
  897 F.3d 747 (6th Cir. 2018) .......................................................... 21

*Mississippi Publishing Corp. v. Murphree,*
  326 U.S. 438 (1946) ................................................................... 34

*Mullins v. Direct Digital, LLC,*
  795 F.3d 654 (7th Cir. 2015) .......................................................... 21

*Mullins v. TestAmerica, Inc.,*
  564 F.3d 386 (5th Cir. 2009) .......................................................... 30

*Mussat v. IQVIA Inc.,*
  No. 17-C-8841, 2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ....................... 38

*Nickert v. Puget Sound Tug & Barge Co.*,
   480 F.2d 1039 (9th Cir. 1973) ............................................... 39

*Peay v. BellSouth Medical Assistance Plan*,
   205 F.3d 1206 (10th Cir. 2000) ............................................. 27

*Phillips Petroleum v. Shutts*,
   472 U.S. 797 (1985) ........................................................... 19

*Quinones v. Pa. Gen. Insurance Co.*,
   804 F.2d 1167 (10th Cir. 1986) ..................................... 29, 30, 31

*Ray v. Edwards*,
   725 F.2d 655 (11th Cir. 1984) ............................................... 38

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
   119 F.3d 935 (11th Cir. 1997) ............................................... 27

*S.E.C. v. Bilzerian*,
   378 F.3d 1100 (D.C. Cir. 2004) ............................................. 29

*Sanchez v. Launch Technical Workforce Solutions, LLC*,
   297 F. Supp. 3d 1360 (N.D. Ga. 2018) ................................... 32

*Scott v. Family Dollar Stores, Inc.*,
   733 F.3d 105 (4th Cir. 2013) ................................................ 38

* *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010) ................................................... 13, 22, 31

*Sibbach v. Wilson & Co.*,
   312 U.S. 1 (1941) ............................................................... 25

* *Smith v. Bayer*,
   564 U.S. 299 (2011) ........................... 5, 13, 19, 20, 23, 30, 35

*Smith v. Swormstedt*,
   57 U.S. 288 (1853) ........................................................ 1, 21

*Snyder v. Harris*,
   394 U.S. 332 (1969) ........................................................... 18

*Suarez v. Cal. Natural Living, Inc.*,
  No. 17-cv-9847, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ................................... 36

*Thompson Hine, LLP v. Taieb*,
  734 F.3d 1187 (D.C. Cir. 2013) ........................................................................ 10

*United States v. Weathers*,
  186 F.3d 948 (D.C. Cir. 1999) ........................................................................ 18

*Walden v. Fiore*,
  571 U.S. 227 (2014) ........................................................................................ 25

*Waste Management Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) ............................................................................ 21

*Weir v. Propst*,
  915 F.2d 283 (7th Cir. 1990) ............................................................................ 4

*Weiss v. Grand Campus Living, Inc.*,
  No. 18-cv-434, 2019 WL 1261405 (S.D. Ind. Mar. 19, 2019) ............................... 36

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ........................................................................................ 16

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
  516 U.S. 199 (1996) ........................................................................................ 35

## Statutes and Federal Rules

28 U.S.C. § 1292(b) ..................................................................................... 4, 10, 38, 39

28 U.S.C. § 1332 ....................................................................................................... 4

28 U.S.C. § 2072(b) ................................................................................................ 25

Federal Rule of Appellate Procedure 5(a)(3) ...................................................... 4

Federal Rule of Civil Procedure 4(k)(1)(B) ........................................................ 29

Federal Rule of Civil Procedure 12(b)(2) ............................................................ 8

Federal Rule of Civil Procedure 23 ...................................................................... 9

Federal Rule of Civil Procedure 23(a) ................................................................ 32

* Federal Rule of Civil Procedure 23(b) ........................................................ 31, 32, 33

Federal Rule of Civil Procedure 23(c) ................................................................ 36

Federal Rule of Civil Procedure 82 ................................................................... 34

Federal Rule of Civil Procedure 82 advisory committee's note ............................ 34

## Other Authorities

Note, *Jurisdiction of Federal District Courts Over Foreign Corporations*,
   69 Harv. L. Rev. 508 (1956) .......................................................................... 28

# INTRODUCTION

For more than a century, it has been the unquestioned rule in federal court that, where many people have a common interest in a dispute, the class-action device enables a district court to proceed with an action brought on a representative basis against a defendant. So long as the representative's claims against the defendant are properly before the court, the court may (once certain prerequisites are met) decide the claims of those who are represented by the party "the same as if all were before the court." *Smith v. Swormstedt*, 57 U.S. 288, 303 (1853). From early Methodist preachers requesting the distribution of church funds to modern-day workers seeking promised but undelivered wages, an unbroken line of cases has recognized "the propriety and fitness" of a rule that the "rights and liabilities of all" may be resolved "by representation" in one centralized proceeding. *Id.*

Whole Foods' appeal in this case seeks to upset this settled understanding of federal practice. In its view, every member of a putative class action—even unnamed potential members—must individually establish personal jurisdiction over the defendant to allow the representative action to proceed, and must do so at the pleading stage, before class certification is sought. And this procedural requirement, Whole Foods says, is *constitutionally* compelled: Forcing a defendant in federal court "to defend" against the claims of unnamed class members from other states, it contends (at 9), "violates interstate federalism and the defendant's due process rights

1

under the Fifth Amendment." For Whole Foods, a court's failure to comply with this procedural requirement "divest[s] the District Court of its power to render a valid judgment" over the absent class members' claims. Appellant's Br. 15.

Class actions of the type that Whole Foods now deems unconstitutional have been around for well over a century—and no court has ever suggested, let alone held, that the practice (in Whole Food's words) violates "constitutional demands." *Id.* at 10. But even Whole Foods admits that nothing directly compels this Court to adopt its unprecedented theory. Instead, Whole Foods offers as support a "trend of Supreme Court precedent" culminating in *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017). *See* Appellant's Br. 10. As Whole Foods sees it, "the next logical step" is for this Court "to extend the reasoning" of *Bristol-Myers* and restrict federal class actions to only those class members who have a direct "connection to the forum." *Id.* at 9, 31.

No proper reading of *Bristol-Myers* supports this remarkable request. In *Bristol-Myers*, the U.S. Supreme Court rejected California's doctrinal test for specific jurisdiction, which was so relaxed as to resemble "a loose and spurious form of general jurisdiction." 137 S. Ct. at 1781. In so holding, the Supreme Court noted that it was applying only "settled principles of personal jurisdiction," and was not changing any of the standards for personal jurisdiction that have governed for decades. *Id.* at 1783.

That is all that is needed to reject Whole Foods' request here. Courts have never been required to engage in a personal-jurisdiction inquiry that asks whether the exercise of jurisdiction over defendants is appropriate with respect to unnamed class members. The inquiry has only ever been about the named parties. *Bristol-Myers* does not dictate a different approach. That case was not a class action, but a mass action with only named parties. And the Court's opinion did not even discuss—much less change—how personal-jurisdiction rules apply in the class-action context.

The same goes for how personal jurisdiction applies in federal court. *Bristol-Myers* applied the Due Process Clause of the Fourteenth Amendment, which acts "as an instrument of interstate federalism." *Id.* at 1781. But federal courts are subject to the due-process restrictions of the Fifth Amendment, not the Fourteenth Amendment, and the same federalism interests are not implicated—a point that Whole Foods unintentionally highlights by repeatedly claiming (at 9) that this case "violates interstate federalism" and its "due process rights" without ever explaining how.

This case may be the first in which a federal circuit addresses the argument that, contrary to the Supreme Court's statement that it applied only settled law, *Bristol-Myers* in fact revolutionized class-action doctrine. It did not. This Court should affirm.

3

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332. The court granted in part and denied in part Whole Foods' motion to dismiss on March 15, 2018. JA33. On June 11, 2018, the court entered an order certifying a "portion of" its March 15 order for an interlocutory appeal under 28 U.S.C. § 1292(b). JA43. Whole Foods filed a petition for permission to appeal to this Court on June 21, 2018. That petition was not filed "within ten days after entry of the order from which the appeal is taken," as section 1292(b) requires. *Kennedy v. Bowser*, 843 F.3d 529, 533 (D.C. Cir. 2016). But Federal Rule of Appellate Procedure 5(a)(3) allows a district court to amend an earlier order to "include the required permission or statement" under section 1292(b), in which case "the time to petition runs from entry of the amended order." Although the district court did not formally amend its March 15 order, at least one court has held that a separate order certifying an appeal "in effect amend[s]" the previous order. *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990). On October 11, a motions panel of this Court granted Whole Foods' petition to appeal "without prejudice to reconsideration by the merits panel." JA272. As we will explain, the Court may wish to reconsider that determination and dismiss the petition as improvidently granted.

## STATEMENT OF THE ISSUES

1. Does the Supreme Court's 2017 decision in *Bristol-Myers*—which applied "settled principles of personal jurisdiction" to a *mass* action in *state* court, 137 S. Ct. at

1783—implicitly create a new personal-jurisdiction test that renders unconstitutional many *class* actions in *federal* court?

2. In a putative class action in which class certification has not yet been sought (such as this one), must a federal court nevertheless have personal jurisdiction over the defendant as to the claim of every unnamed class member, based on "the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*," *Smith v. Bayer*, 564 U.S. 299, 313 (2011)?

## STATUTES AND REGULATIONS

All relevant statutes, rules, and constitutional provisions are included in the appellant's brief.

## STATEMENT OF THE CASE

### I.  Factual background

Whole Foods is a Texas corporation that owns and operates hundreds of grocery stores in the United States, including several stores in Washington, D.C. JA46.[1] One of the ways in which the company attracts a skilled and motivated workforce is by offering all of its employees a profit-sharing program as part of their promised compensation. JA47. This program, known as a "gainsharing" program,

---

[1] The complaint in this case names two defendants: Whole Foods Market and Whole Foods Market Group. The district court dismissed the claims as to the former, JA16, a determination the plaintiffs are not challenging in this interlocutory appeal. For that reason, this brief refers to Whole Foods Market Group as simply "Whole Foods."

automatically pays a bonus to any employee who works in a department that generates a surplus based on its labor budget. *Id.* The program aims to increase productivity and revenue while reducing labor costs. *Id.*

Aware of the importance of the program, Whole Foods has touted its benefits to potential hires and current employees, who in turn rely on these bonuses as part of their expected compensation. *Id.* In particular, Whole Foods has told its employees: "Through this program, each Team's payroll is linked to its Team sales, so increases in sales bring more money for the Team's payroll." JA49. "When your sales increase, the labor budget increases too. BUT if you increase your sales, without using all budgeted labor . . . GAIN IS SHARED" among employees on the team (that is, in the department). *Id.* (some capitalization removed). It has made these same representations by contract. *Id.*

Behind the scenes, however, Whole Foods has manipulated the program by shifting labor costs among departments to reduce or eliminate the amount of surplus it would distribute to employees. *Id.* So, for example, if one department failed to operate within budget, the excess labor costs of that underperforming department would be shifted to one or more departments that had generated a surplus by coming in under budget. *Id.* This would result in a reduction in—and perhaps even an elimination of—shared surplus for the employees of those overperforming departments, who had absorbed the excess labor costs of the underperforming

departments. JA49–50. And because only excess labor costs were shifted, this maneuvering would not create any shared surplus for the underperforming departments, so the company kept money at the expense of, and despite its promises to, its hardest-working employees. *Id.*

Whole Foods compounded its manipulation through the creation of "fast teams." JA51. Members of a fast team could float from one department to another for the ostensible purpose of helping improve the service of departments as needed. *Id.* But in reality, Whole Foods used fast teams as a way of shifting labor costs among departments by not properly categorizing the work of individual fast-team members, thus allowing the company to avoid paying the full surplus owed to its employees. *Id.*

Whole Foods has publicly admitted that its store managers have improperly manipulated the gainsharing program to save the company money. JA52. In December 2016, Whole Foods admitted that it had "fired nine store managers in the mid-Atlantic region for manipulating a bonus program to their benefit." *Id.* It said that the managers had "engaged in a policy infraction that allowed [them] to benefit from a profit-sharing program at the expense of store employees." *Id.* These nine stores as to which Whole Foods has publicly admitted wrongdoing include stores in and around Washington, D.C., but there is no reason to believe that the policy of manipulation was limited to just those stores. *Id.* To the contrary, the fired store managers maintain that the unlawful practice was imposed as part of a nationwide

corporate policy, and other evidence indicated that it extended well beyond nine stores; it was not the result of any rogue managers. JA53.

## II.    Procedural background

In December 2016, seven current or former Whole Foods employees filed this case. They assert claims for breach of contract, unjust enrichment, and common-law fraud, as well as violations of D.C. (and other jurisdictions') wage laws. JA44–84. The named plaintiffs (five of whom worked at Whole Foods stores in Washington, D.C.) brought suit on behalf of a putative class of current and former Whole Foods employees who, like them, had been denied wages under the gainsharing program. JA44–46. The complaint indicates that the plaintiffs will also seek to certify subclasses. JA68. But no class or subclass has yet been proposed because no motion for class certification has yet been filed.

Whole Foods moved to dismiss the claims on several grounds, only one of which is relevant to this appeal. It sought dismissal of the two non-D.C. plaintiffs' claims for lack of personal jurisdiction and argued that "the remaining claims should be limited to alleged injuries occurring within the District of Columbia, pursuant to Federal Rule of Civil Procedure 12(b)(2)." Dist. Ct. ECF No. 30; *see also* ECF No. 30-1, at 13 ("[T]he Court should dismiss Bowens's and Strickland's claims . . . for want of personal jurisdiction, and limit the adjudication of the remaining Plaintiffs' claims as described above."). Whole Foods also included a sentence saying that "Plaintiffs

have alleged no facts to support personal jurisdiction over Bowens, Strickland, *or non-resident putative class members*." ECF No. 30-1, at 13 (emphasis added). But Whole Foods did not move to dismiss the claims of "putative class members," *see* ECF No. 30, and those claims are not yet in the case because certification has not been sought.

The district court granted the motion in part and denied it in part. Relying on *Bristol-Myers*, the court granted the motion as to the claims of the two named plaintiffs who had not worked in Washington, D.C. JA10–13. The court then "consider[ed] whether it has jurisdiction over the putative class members who are non-forum residents"—even though those class members are not part of the case at this point and Whole Foods had not moved to dismiss their (not-yet-existent) claims. JA13.

The court "conclude[d] that *Bristol-Myers* does not apply to class actions." *Id.* In doing so, the court was "persuaded by the analysis of the few courts that have squarely addressed the issue," and emphasized two "key distinctions" between class actions and mass actions. JA13–14. *First*, "in a mass tort action, each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint." JA14 (quotation marks omitted). *Second*, "unlike a mass tort action, for a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23 [of the Federal Rules of Civil Procedure]—numerosity, commonality,

typicality, adequacy of representation, predominance and superiority"—which are "not applicable in the mass tort context." *Id.* (quotation marks omitted). The court therefore denied the "motion to dismiss the complaint as to non-resident putative class members for lack of personal jurisdiction." *Id.*

Several months later, the district court certified a "portion of" its order—the holding that *Bristol-Myers* "does not preclude this court from exercising personal jurisdiction over the claims of unnamed, nonresident putative class members"—for an interlocutory appeal under 28 U.S.C. § 1292(b). *See* JA43. The court determined that the order satisfied the stringent requirements of section 1292(b)—including its requirement that the order involve a "controlling question of law"—even though the issue it identified was not yet properly before the court. *See* JA34–42.

With the district court having certified the order for an interlocutory appeal, Whole Foods then petitioned this Court for permission to appeal. In October 2018, a motions panel of this Court granted the petition for permission to appeal, while noting that it was "without prejudice to reconsideration by the merits panel." JA272.

## STANDARD OF REVIEW

The district court's decision on the question of personal jurisdiction presents an issue of law that is subject to de novo review. *See, e.g.*, *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013).

## SUMMARY OF ARGUMENT

**I.** Whole Foods' argument, in a nutshell, is that *Bristol-Myers* "narrowed the scope of personal jurisdiction," and that this Court "must . . . extend" the decision by narrowing personal jurisdiction further. It is wrong on both counts.

As *Bristol-Myers* itself makes clear, it involved a "straightforward application" of "settled principles of personal jurisdiction" to the claims of *named* parties in a *mass* action in *state* court. 137 S. Ct. at 1783. *Bristol-Myers* says nothing about the key question here: the proper treatment of *unnamed* members of a putative *class action* in *federal* court. With respect to that question, what is "settled" is that federal courts have never subjected unnamed class members to separate personal-jurisdiction inquiries.

**II.** To disturb this settled understanding, Whole Foods would have to first show that unnamed class members are "parties" for personal-jurisdiction purposes. It makes little attempt to do so. Unnamed members are not formally parties. And although the Supreme Court has held that they may be deemed parties for limited purposes "based on context," applying a contextual analysis in fact underscores why they are not parties here. *See Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002).

*First*, unnamed class members have not traditionally been considered parties for personal-jurisdiction purposes. Courts have long been able to adjudicate—and have in fact adjudicated—class actions even when some unnamed members are not personally "within the jurisdiction" of the courts. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940).

*Second*, "the goals of class action litigation" strongly support this traditional understanding. *See Devlin*, 536 U.S. at 10. Whole Foods' approach would turn Rule 23 on its head, preferring to adjudicate a single controversy through many different class actions in different federal courts—even when a single class would satisfy Rule 23.

*Third*, no compelling reason justifies such a novel and senseless turn. Neither of the two candidates proposed by Whole Foods—due process and interstate federalism—comes anywhere close. The due-process argument is circular: It *assumes* that unnamed class members are parties with claims as to which personal jurisdiction must separately be satisfied. But the question at the threshold is *whether* unnamed class members should be treated as parties for this purpose. Whole Foods gives no independent reason why adhering to the traditional understanding—that they are not parties for this purpose—violates due process. Nor does it explain how that understanding could impinge on interstate federalism. States may have an interest in "try[ing] causes in their courts," *Bristol-Myers*, 137 S. Ct. at 1780, but this litigation will proceed in federal court either way.

**III.** Even setting aside the party-status question, Whole Foods' theory should be rejected because federal law authorizes federal courts to adjudicate a class claim if the defendant was validly served and the class satisfies the requirements of Rule 23. There is no constitutional impediment to doing so. "Under the Fifth Amendment, which defines the reach of the federal courts," what matters is that a defendant have

12

minimum "contacts with the United States as a whole." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 55 (D.C. Cir. 2017). We have that here.

Whole Foods tries to make state-level contacts relevant by invoking the principle that federal courts sitting in diversity normally look to state law in assessing personal jurisdiction. But that common-law principle applies only "in the absence of direction by federal statute or rule." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 226 (2d Cir. 1963) (en banc). Here, the federal rules supply the necessary authorization. When a named plaintiff in a putative class action properly serves a defendant under Rule 4, the court has personal jurisdiction over the defendant as to that claim. And when certification is sought, Rule 23 "explicitly" "empowers a federal court to certify a class in each and every case where the Rule's criteria are met." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, at 399 (2010) (quotation marks omitted). Whole Foods would read into Rule 23 an unwritten exception for unnamed class members based on state lines. Whole Foods provides no basis for creating such an exception, and it would badly undermine the federal policy the rule aims to promote.

**IV.** A narrower, alternative ground for affirmance is also available. Regardless of whether unnamed members of a *certified* class are parties for personal-jurisdiction purposes, there is no serious argument that they are parties *before* certification. *See Bayer*, 564 U.S. at 313. Because certification has not yet been sought here, there is not yet a class, not yet any class members, and not yet any class claim to dismiss.

13

## ARGUMENT

I. ***Bristol-Myers* applied settled personal-jurisdiction principles to mass-tort claims in state court and affords no basis to create a new rule for federal class actions.**

Whole Foods' theory for reversal proceeds as follows: *Bristol-Myers* "narrowed the scope of personal jurisdiction," so the "next logical step . . . must be to extend" that decision by sharply "[l]imiting" federal class actions based on what Whole Foods believes is the "trend of Supreme Court precedent." Appellant's Br. 9–10, 31. But the Supreme Court itself said the opposite: *Bristol-Myers* involves an application of settled precedent—not an alteration of it. Whole Foods offers no reason for this Court to do what that Court did not. "Without any compelling justification for developing a new personal-jurisdiction doctrine," this Court should take the approach it has taken in the past: "decline" the invitation and "adhere[] to the status quo of personal-jurisdiction doctrine." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017).

To state the obvious, *Bristol-Myers* did not involve a class action in federal court. It involved a mass action in which 678 individual plaintiffs (86 of whom were from California, and 592 of whom were from other states) filed separate complaints in California state court. 137 S. Ct. at 1778. The California Supreme Court held that the out-of-state plaintiffs could bring their state-law claims in California court based on that state's unique "sliding scale approach to specific jurisdiction," which allowed the

14

required "connection between the forum contacts and the claim" to be reduced depending on how "wide ranging the defendant's forum contacts" were. *Id.*

The U.S. Supreme Court reversed. It explained that, under "settled principles regarding specific jurisdiction," there "must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 1781 (quotation marks omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* California's "sliding scale approach" contravened this settled framework because it relaxed "the strength of the requisite connection between the forum and the specific claims at issue." *Id.*

The Supreme Court held that California's approach to personal jurisdiction was incompatible with the constraints imposed by the Fourteenth Amendment's Due Process Clause, which "limits the personal jurisdiction of state courts." *Id.* at 1779. That was so not because of any "practical problems resulting from litigating in the forum"—the defendant there was already facing suit in California court for similar claims brought by California residents—but because the due-process "interests" of the Fourteenth Amendment "encompass[] the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* at 1780. As the Court explained, because the "States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try

15

causes in their courts," the "sovereignty of each State" implies "a limitation on the sovereignty of all its sister States." *Id.* (quotation marks omitted). In other words, the Fourteenth Amendment's "restrictions on personal jurisdiction" offer "more than a guarantee of immunity from inconvenient or distant litigation," they also "are a consequence of territorial limitations on the power of the respective States." *Id.*

In *Bristol-Myers*, this "federalism interest" proved "decisive." *Id.*; *see also id.* at 1788 (Sotomayor, J., dissenting) ("The majority's animating concern, in the end, appears to be federalism."). California's exercise of sovereign power over the claims of, say, Ohio plaintiffs would have encroached on the interests of Ohio courts to hear their residents' cases and apply their own procedural rules. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–93 (1980) (explaining that the "principles of interstate federalism" embodied in the Fourteenth Amendment's Due Process Clause "ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system"). As a result, the Court explained, "even if" California's exercise of personal jurisdiction over nonresidents' claims would have exposed the defendant to "minimal or no inconvenience," and "even if" California was "the most convenient location for litigation," California's exercise of personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *Bristol-Myers*, 137 S. Ct. at 1780–81.

By its own reckoning, however, the Court's decision in *Bristol-Myers* was narrow—nothing more than a "straightforward application . . . of settled principles of personal jurisdiction." *Id.* at 1783; *see id.* at 1781 ("Our settled principles regarding specific jurisdiction control this case."). And the Court was careful to cabin the scope of its decision. Because the decision concerned "the due process limits on the exercise of specific jurisdiction by a State," the Court took pains to note, the opinion did not touch "on the exercise of personal jurisdiction by a federal court." *Id.* at 1783–84. Nor did it decide whether the same result would obtain in a class action under Rule 23. *See id.* at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action.").

Standing alone, this is enough to reject Whole Foods' claim (at 31) that *Bristol-Myers* "must be" extended to class actions in federal court. Whole Foods cites no pre-*Bristol-Myers* decision holding that, for class actions in federal court, specific jurisdiction must be established not only as to the named plaintiffs' claims, but also as to the absent class members' claims. That is not surprising: For decades, courts have been in agreement that, in a case like this one, involving a class action in federal court, the claims of absent class members are irrelevant for purposes of establishing personal jurisdiction. "The pre-*Bristol-Myers* consensus," in other words, was that "due process neither precluded nationwide or multistate class actions nor required [an] absent-class-member-by-absent-class-member jurisdictional inquiry." *Al Haj v.*

17

*Pfizer Inc.*, 338 F. Supp. 3d 815, 818–19 (N.D. Ill. 2018). Unless and until the Supreme Court exercises its "prerogative" to overturn this consensus, it should continue to control. *United States v. Weathers*, 186 F.3d 948, 957 n. 12 (D.C. Cir. 1999) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (confirming that lower courts may not conclude that the Supreme Court has overruled previously controlling authority "by implication").

## II.     Unnamed class members have never been—and should not be—considered "parties" for personal-jurisdiction purposes.

Even setting aside the limiting language of *Bristol-Myers*, Whole Foods can prevail in this appeal only if it first establishes that unnamed class members should be treated as "parties" for personal-jurisdiction purposes. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case."). That is a tall order. Unnamed class members are not parties in any formal sense, and they have not been treated as the functional equivalent of parties for most purposes, including jurisdictional purposes. For example, they "are not considered parties for the purposes of the complete diversity requirement in suits under 28 U.S.C. § 1332." *Devlin*, 536 U.S. at 9; *see Snyder v. Harris*, 394 U.S. 332, 340 (1969). Nor are they considered parties for purposes of a magistrate's consent jurisdiction to enter judgment under 28 U.S.C. § 636(c). *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017) (citing cases).

Nor have unnamed class members been traditionally understood to be parties for personal-jurisdiction purposes. Before *Bristol-Myers*—a case that has nothing to do with this antecedent question of class-action doctrine—no source of law to our knowledge had ever been interpreted to require federal courts to engage in a separate personal-jurisdiction inquiry as to the claims of all unnamed class members. Not the Constitution. Not the federal rules. Not a federal statute or federal common law. Whole Foods cites no authority to the contrary. And legions of class actions have been certified in the past that could no longer be certified if Whole Foods' theory were to become the law.

Whole Foods' bid for a sea change hinges on the fact that the Supreme Court has said that absent class members may be considered parties for "some purposes" "based on context." *Devlin*, 536 U.S. at 9–10. But *Devlin* was decided more than fifteen years ago, and it did not suggest, let alone hold, that unnamed class members should be treated as parties for personal-jurisdiction purposes. The same is true of the other cases that Whole Foods says support its theory here, many of which have been on the books for even longer than *Devlin*. *See* Appellant's Br. 23 (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985); and *Bayer*, 564 U.S. 299). On Whole Foods' reading of these cases, many class actions have been unconstitutional for decades but nobody has figured it out until now.

In any event, the inquiry about when unnamed class members can be treated as parties is contextual, highly pragmatic, and purpose-driven. It takes account of the settled practice, *Devlin*, 536 U.S. at 7, and asks (1) whether a compelling justification exists for treating unnamed class members as parties for a particular purpose, and (2) whether "the goals of class action litigation" would be best served by doing so. Appellant's Br. 10–11. Only once has the Supreme Court held that absent class members should be treated as parties for a particular purpose, and that was in *Devlin*.[2]

Under *Devlin*'s pragmatic approach, this is not a close case. Whole Foods makes almost no attempt to show that any of the factors favor its preferred outcome. Start with settled practice. In *Devlin*, a divided Court held that unnamed members in a certified class action may be treated as parties for the limited purpose of appealing approval of a settlement that would extinguish their claims.[3] The majority noted that the Court had "never restricted the right to appeal to named parties," but had

---

[2] Although *Devlin* described an earlier decision as holding that unnamed class members are "parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them," 536 U.S. at 10, the Supreme Court later clarified that that decision "demonstrate[s] only that a person *not a party* to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding." *Bayer*, 564 U.S. at 313 n.10 (emphasis added).

[3] The dissent in *Devlin* would have held that *only* "the class representatives" in a class action may be considered parties, and that this is true for all purposes. 536 U.S. at 15, 18 (Scalia, J., dissenting) (noting that an unnamed class member "is not a party" but may nevertheless be bound by a judgment because he is "represented by class members who are" parties).

instead "allowed [nonparties] to appeal in the past." *Id.* at 7. Here, by contrast, it has long been the case that, when many people have a "common interest" in a dispute, courts may proceed even though a "number of those interested in the litigation" are not personally "within the jurisdiction" of the court. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940) (explaining that class actions represent a "recognized exception" to the principle that courts may adjudicate cases only when they have personal jurisdiction with respect to the claims of everyone who will be bound by a resulting judgment); *see also Swormstedt*, 57 U.S. at 303. For many years, courts have done just that—adjudicating class actions without parsing the basis of personal jurisdiction as to the claims of each individual unnamed class member. *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003); *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018)

Whole Foods fares no better under the next factor. *Devlin* makes clear that a court should seek to promote "the goals of class action litigation." *See* 536 U.S. at 9–10 (asking whether "considering nonnamed class members parties for the purposes of bringing an appeal [would] conflict with any other aspect of class action procedure"). That is why, for example, unnamed class members receive the benefit of tolling when a class complaint is filed. "Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action

litigation—to simplify litigation involving a large number of class members with similar claims—would be defeated." *Id.* at 10. A similar rationale underpins "[t]he rule that nonnamed class members cannot defeat complete diversity," which "is likewise justified by the goals of class action litigation." *Id.* "Ease of administration of class actions," the Court elaborated, "would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction." *Id.*

It's no wonder that Whole Foods fails to discuss this key factor, for one could say the same thing about its proposed rule. Whole Foods concedes that its rule would not prohibit conducting several statewide class actions simultaneously in multiple federal courts, and would instead prohibit only conducting them together in a single federal court, even though the total number of class members and the relief sought would be the same in both scenarios. That outcome is about as sensible as it sounds. As discussed in more detail in the next section, it would "conflict" with not only a core purpose of Rule 23—"to simplify litigation involving a large number of class members with similar claims" by "preventing multiple suits," *see id.* at 10–11—but also with its text. By its plain terms, Rule 23 "explicitly" "empowers a federal court to certify a class in each and every case where the Rule's criteria are met." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, at 399 (2010) (quotation marks omitted); *see Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1334 (D. Minn. 2018)

("[I]t promotes efficiency and expediency to litigate all claims at once rather than to separate the nationwide class.").

So the question is whether Whole Foods can identify some compelling reason that could possibly justify such a result. It cannot do so, and barely even tries. *Devlin* was unique in that it was predicated on the fact that an unnamed member's "right to appeal [a settlement] cannot be effectively accomplished through the named class representative" because their interests "by definition diverge." 536 U.S. at 9. This case involves nothing of the sort. A class will be certified only if it is "sufficiently cohesive to warrant adjudication by representation," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (quotation marks omitted), in which case the interests of the named and unnamed members will be aligned. If a class is not certified, there will be *no* unnamed members to bind. *See Bayer*, 564 U.S. at 315 ("Neither a proposed class action nor a rejected class action may bind nonparties.").

Nevertheless, Whole Foods claims that the question here is "akin to" the one in *Devlin*. Appellant's Br. 23.[4] But it says precious little about *why*. It vaguely mentions

---

[4] Whole Foods also says (at 23) that it is "akin to" decisions concerning "the tolling of the statute of limitations" and "the binding effect of a judgment." But, as noted in the last footnote, an unnamed class member is actually "not a party" for tolling purposes. *Bayer*, 564 U.S. at 313 n.10. As for the judgment's binding effect, this is not dispositive because "nonparties may be bound by a judgment." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935–36 (2009) (refusing to consider the government as a "party" for purposes of Rule 4 even though the case was "brought in the name of the Government" and the government "is bound by the

"due process" and "federalism" as potential reasons. *Id.* at 22–25. Rule 23, however, already serves to address any due-process concerns. *See Knotts*, 346 F. Supp. 3d at 1333 ("[A] class action suit must satisfy due process procedural safeguards that do not exist in mass tort actions."). Whole Foods does not explain how Rule 23's built-in procedural safeguards will be inadequate here. Nor does it explain how due process or federalism would be promoted by its proposed alternative—having multiple class actions in multiple federal courts when a single class action in a single federal court would be authorized by Rule 23. The decisive federalism interest identified in *Bristol-Myers* concerned states' "sovereign power to try causes in their courts." 137 S. Ct. at 1780. That concern is irrelevant when a case will proceed in federal court either way.

The hollowness of Whole Foods' position can be illustrated by a conclusory statement in the Chamber of Commerce's *amicus* brief. Citing *Devlin*, the Chamber asserts (at 25) that, "[i]f absent class members are considered parties to protect their own interests in a binding judgment, surely they are considered parties for purposes of personal jurisdiction, a constitutional defense protecting a defendant's interests in not being haled into an inappropriate court and being bound by its judgment." This is entirely question-begging. The question here is whether unnamed class members are parties with claims as to which personal jurisdiction must separately be satisfied.

---

judgment"). So it is in class actions: "Representative suits with preclusive effect on nonparties include properly conducted class actions." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).

If they are not, the court is not "inappropriate." And the only thing that is "surely" true is this: Irrespective of whether Whole Foods gets its way in this appeal, it will be "haled into" the *same court* and have to defend against the *same claim* by the *same named plaintiffs*, and it will be "bound by" the judgment resolving that claim all the same. *See Bristol-Myers*, 137 S. Ct. at 1780 (affirming that the due-process inquiry exists at the level of "the *suit*"). So too if a series of statewide class actions were brought in different federal courts, which Whole Foods concedes would be permissible. That balkanized approach has nothing to recommend it. Far from providing a basis for splitting up one class action into many, *Devlin*'s pragmatic inquiry in fact requires the opposite.[5]

---

[5] Because unnamed class members are not "parties" whose claims trigger a separate personal-jurisdiction inquiry, the general principle that "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction" does not matter here. Appellant's Br. 12 (quoting *Walden v. Fiore*, 571 U.S. 227, 286 (2014)). That principle is more than 50 years old. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Yet Whole Foods cites no authority to suggest that it has ever been interpreted in the way that Whole Foods proposes. The Rules Enabling Act, which Whole Foods briefly invokes (at 19–20), is equally beside the point. That Act provides that the Federal Rules of Civil Procedure may not "abridge, enlarge, nor modify the substantive rights" of a litigant. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 10 (1941) (quoting 28 U.S.C. § 2072(b)). But "substantive right[]" refers to rights conferred by the underlying substantive laws dealt with in a given proceeding, such as negligence laws, *id.* at 13, environmental laws, *In re Deepwater Horizon*, 739 F.3d 790, 804 n.53 (5th Cir. 2014), and so on. *See also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015) (contrasting procedural rights with "rights and duties recognized by substantive law" and noting that "the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act"). Here, Whole Foods asserts only a procedural right, not a right under substantive law. So as long as the procedures used below comport with constitutional due process, the Rules Enabling Act provides no independent basis for Whole Foods' challenge.

## III. The Constitution permits, and the federal rules authorize, a federal court's adjudication of a class claim if the defendant was validly served and the class satisfies Rule 23.

Whole Foods' argument fails for another reason. Unlike *Bristol-Myers*, which applied the Due Process Clause of the Fourteenth Amendment to a state-court proceeding, federal courts are governed by the Fifth Amendment. The Due Process Clause of the Fifth Amendment looks only to a defendant's contacts with the nation as a whole, and so would permit the eventual exercise of personal jurisdiction over the putative class members' claims here. As a result, the only question is whether exercising such jurisdiction would be consistent with federal statues, the federal rules, and federal common law. *Bristol-Myers* did not purport to change, or even interpret, the federal laws and rules governing class actions. Those rules have long permitted the exercise of jurisdiction over unnamed class members' claims in contexts like this one. *Bristol-Myers* therefore poses no obstacle to the adjudication of this case.

**A.** To begin with, the due-process inquiry is different for federal courts than it is for state courts. Although "the *level* of contacts required for personal jurisdiction" is the same, "the *scope* of relevant contacts" is different. *Livnat*, 851 F.3d at 55 (first emphasis added). As this Court has held (and Whole Foods acknowledges, at 16): "Under the Fourteenth Amendment, which defines the reach of state courts, the relevant contacts are state-specific. Under the Fifth Amendment, which defines the reach of federal courts, contacts with the United States as a whole are relevant." *Id.*

26

That is because "[t]he jurisdiction whose power federal courts exercise is the United States of America, not the [s]tate" in which the suit happens to be brought. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001), *as amended* (July 2, 2001); *see Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997) ("[A] defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis.").[6]

Whole Foods undoubtedly has sufficient "contacts with the United States as a whole" to justify a federal court's exercise of personal jurisdiction over it. *Livnat*, 851 F.3d at 55. The company is incorporated and headquartered in the United States, and this lawsuit arises solely from activity occurring in this country. The Fifth Amendment thus poses no barrier to the exercise of personal jurisdiction here. *See,*

---

[6] In a footnote in *Livnat*, this Court observed that "[s]ome courts have also suggested that under the Fifth Amendment, even if the defendant has sufficient nationwide contacts, a plaintiff must additionally justify jurisdiction in the particular state." 851 F.3d at 55 n.6. But this Court did not adopt a constitutional requirement of this sort. And the two cases it cited hold only that, "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000); *see also Republic of Panama*, 119 F.3d at 947. Even assuming such a requirement were found to exist as a constitutional matter, Whole Foods does not contend that this case is one of the "highly unusual cases" in which the defendant can meet its "burden" of showing that "the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that [the defendant] unfairly is at a severe disadvantage in comparison to [its] opponent." *Peay*, 205 F.3d at 1212 (quotation marks omitted). Nor could it possibly do so: Whole Foods will have to litigate in this forum *regardless*.

*e.g.*, *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 47 (D.D.C. 2011) (applying a "nationwide-minimum-contacts standard" and holding that, because the defendants are "residents of the United States, they are subject to personal jurisdiction in this district . . . in accordance with the Fifth Amendment's Due Process Clause").

**B.** Attempting to resist this conclusion, Whole Foods argues (at 17) that the federal nature of this forum is irrelevant because a federal court sitting in diversity is "stepping into the place of a state court," and should therefore adopt the personal-jurisdiction limitations that apply to state courts. In support, Whole Foods relies on *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004), which in turn cites an earlier case for the proposition that personal jurisdiction in a diversity action "initially turns on local (state) law." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963) (en banc) (Friendly, J.)).

What Whole Foods neglects to mention, however, is that this principle is not constitutionally mandated; it applies only "in the absence of direction by federal statute or rule." *See Arrowsmith*, 320 F.2d at 226 ("fully conced[ing]" that the principle is not constitutionally required). So Whole Foods is correct that, as a matter of federal common law, there is a presumption that federal courts will not exercise personal jurisdiction in a diversity case beyond the equivalent jurisdiction of the state in which they sit. *See id.* at 222–27; *see also* Note, *Jurisdiction of Federal District Courts Over Foreign Corporations*, 69 Harv. L. Rev. 508, 509 (1956) (discussing historical antecedents to this

28

doctrine). But because this is simply a background common-law principle, rather than a hard constitutional rule, it does "not prevent Congress or its rule-making delegate from authorizing" federal courts to exercise jurisdiction in diversity cases on terms different from those that apply to state courts. *Arrowsmith*, 320 F.2d at 226.

Were it otherwise—if the Constitution required minimum contacts with the forum state even in federal court—Congress would have been unable to authorize nationwide service of process via federal statute. *See, e.g.*, *S.E.C. v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004). The same is true of exercises of personal jurisdiction under the federal rules. Rule 4(k)(1)(B), for instance, authorizes service of process on a party within 100 miles of a federal district court. A federal court sitting in diversity may serve defendants within that radius even if they would not be subject to personal jurisdiction in the court's forum state. *See Quinones v. Pa. Gen. Ins. Co.*, 804 F.2d 1167, 1173–77 (10th Cir. 1986) (explaining that there is "no argument" to the contrary and *Arrowsmith* poses "no obstacle" to the rule's application); *Freiman v. Lazur*, 925 F. Supp. 14, 26 (D.D.C. 1996) ("[I]f a party lacks minimum contacts with the forum state, yet has minimum contacts with the 100–mile 'bulge area,'" there is "personal jurisdiction over the party pursuant to Rule 4(k)(1)(B) and Rule 19."). This rule is "undoubtedly" consistent with the Constitution. *Quinones*, 804 F.2d at 1178. And state law "cannot be permitted to affect the duty of a federal court, which is part of an independent system

for administering justice, to effectuate the federal policy enunciated in a rule whose constitutionality is established." *Id.* (quotation marks omitted).[7]

**C.** Yet that is exactly what Whole Foods is asking this Court to do. When a named plaintiff in a putative class action properly serves a defendant under Rule 4, the federal court has personal jurisdiction over the defendant as to that claim. The unnamed class members are in no sense parties to the litigation at that point, so their claims are not yet in the case. *See Bayer*, 564 U.S. at 313; *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) ("[A] class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23.").

When the named plaintiff moves for class certification, Rule 23 kicks in. That rule "unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to

---

[7] Whole Foods cites a Fifth Circuit case (at 17) that mentions the Fourteenth Amendment in formulating the common-law rule. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). But this doesn't mean that the rule is *required by* the Fourteenth Amendment. The provision does not apply to the federal government. (Nor, for that matter, does it directly apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954)). Instead, the Fourteenth Amendment comes into play only because it limits *state*-court jurisdiction, and the federal common law rule, when applicable, instructs federal courts to look to state-court limits. The federal common-law rule articulated in the Fifth Circuit case (and others like it) ultimately traces to Judge Friendly's decision in *Arrowsmith*, which "fully concede[s]" that the rule is not constitutionally mandated and does "not prevent Congress or its rule-making delegate from authorizing a district court to assume jurisdiction over a foreign corporation in an ordinary diversity case although the state court would not," as it has done in a number of instances. 320 F.2d at 226. *See also, e.g.*, *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375, 377 (5th Cir. 1980) (citing *Arrowsmith*).

maintain a class action if the Rule's prerequisites are met." *Shady Grove*, 559 U.S. at 406. By doing so, it "explicitly" "empowers a federal court to certify a class in each and every case where the Rule's criteria are met." *Id.* at 399 (quotation marks omitted). The "clear federal policy underlying the rule," *Quinones*, 804 F.2d at 1176, is to consolidate similar claims in a single lawsuit in federal court "in those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Am. Pipe*, 414 U.S. at 551 (quoting Fed. R. Civ. P. 23(b)(3)).

Whole Foods' position is at war with both the text of Rule 23 and its underlying policy. As to the text, Whole Foods would read into Rule 23 an unwritten exception for absent class members based on state lines. But Rule 23 "empowers a federal court to certify a class in *each and every case* where the Rule's criteria are met," *Shady Grove*, 559 U.S. at 399 (emphasis added) (quotation marks omitted). Congress, of course, "can create exceptions to [this] rule as it sees fit," but it has not done so here. *Id.* at 400.

And why would it? Whole Foods concedes that, even in its view, "plaintiffs can bring separate, state-specific suits" in federal court "for all plaintiffs harmed in a specific forum." Appellants' Br. 9. So rather than allow a single class action in federal court for a single controversy involving, say, Virginia, Maryland, and D.C. residents, Whole Foods would require three separate class actions in federal court: one in

Virginia, one in Maryland, and one in D.C. That makes no sense. In either scenario, the cases would proceed in federal court, and there is unquestionably a strong federal interest in preventing unnecessary or duplicative federal litigation. And because Rule 23 contains "due process procedural safeguards that do not exist in mass tort actions," *Knotts*, 346 F. Supp. 3d at 1333, resolving the claims in a single federal class action rather than multiple federal class actions will not cause undue harm to the defendant. A class action that satisfies Rule 23's requirements will, by virtue of doing so, present the defendant with "a unitary, coherent claim to which it need respond only with a unitary, coherent defense." *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018).

But Whole Foods' approach is worse than just pointless—it is inconsistent with Rule 23's design. Rule 23(b) provides that a "class action may be maintained if Rule 23(a) is satisfied" and one of three additional requirements is met.[8] Under subsection (b)(1), the plaintiffs may show that prosecuting separate actions would create a risk of inconsistent results, such as where the defendant is "obliged by law to treat the members of the class alike." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under (b)(2), the plaintiffs may show that the defendant "has acted or refused to act

---

[8] Rule 23(a) requires a showing that (1) the class is sufficiently numerous to make joinder of all class members impracticable, (2) there are common factual or legal issues, (3) the named plaintiffs' claims are typical of the class, and (4) the named plaintiffs will fairly and adequately protect the interests of the class.

on grounds that apply generally to the class," such that declaratory or injunctive relief is appropriate for "the class as a whole." And under (b)(3), the plaintiffs may show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As Whole Foods would have it, even a class that meets one of these three requirements could not proceed as a single action on behalf of "the class as a whole" (as subsection (b)(2) requires). That would be true even if the class were the "superior" way of "adjudicating the controversy" (as subsection (b)(3) requires). Instead, the controversy would have to be resolved in a slew of "separate actions" in federal court (as subsection (b)(1) forbids). This approach violates Rule 23's plain text and severely undermines its purpose by inviting "precisely the multiplicity of activity which Rule 23 was designed to avoid." *Am. Pipe*, 414 U.S. at 551. As a result, the background common-law presumption that exists "in the absence of direction by federal statute or rule" does not apply here. *Arrowsmith*, 320 F.2d at 226. Simply put, federal common law should not be applied in a way that would dramatically disturb settled practice, revise the text of the Rule, and undermine clear federal policy.[9]

---

[9] Rule 4(k)(1)'s territorial limitation on service of process does not change this conclusion. Service of process on the defendant by unnamed class members has never been required under Rule 4, Rule 23, or any other law. Rule 4 therefore does not limit federal courts' jurisdiction over unnamed class members' claims.

Nor is there any merit to Whole Foods' contention (at 19–21) that Rule 82 requires a different result. It is true that Rule 82 states that the rules "do not extend or limit the jurisdiction of the district courts." But that use of the word "jurisdiction" refers only to *subject-matter* jurisdiction. This is clear from the Advisory Committee's notes to Rule 82, which say that the rule would be "a flat lie" if it included "personal or quasi-in rem jurisdiction" within its scope. Fed. R. Civ. P. 82 advisory committee's note. It is also clear from the Supreme Court's decision in *Amchem*, on which Whole Foods relies (at 19–21). That decision likewise reads Rule 82 to refer to "the subject-matter jurisdiction of the United States district courts." 521 U.S. at 613 (brackets omitted); *see also Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 445 (1946) (noting that Rule 82 "must be taken to refer" to subject-matter jurisdiction). At any rate, Rule 23 poses no problem from the perspective of subject-matter *or* personal jurisdiction, for it authorizes class proceedings only in a court that "already ha[s] venue and jurisdiction of the subject matter" of the case, against a defendant who has been validly "brought into court" by service under Rule 4. *Id.* at 445.

## IV.   At a minimum, personal jurisdiction as to the claims of unnamed class members is not required before certification is sought.

Alternatively, the district court's order can be affirmed on a narrower ground: by recognizing that, whatever *Bristol-Myers*'s proper scope, personal jurisdiction as to unnamed putative class members' claims need not be established *before class certification is sought*. This alternative ground of affirmance is available on appeal even though

34

the district court purported to certify only a "portion of" its order for an interlocutory appeal under 28 U.S.C. § 1292(b) (specifically, its holding that *Bristol-Myers* "does not preclude this court from exercising personal jurisdiction over the claims of unnamed, nonresident putative class members"). JA43. "Under section 1292(b), 'appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court.'" *Kennedy*, 843 F.3d at 533 n.2 (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).

Here, the certified order denied in part and granted in part Whole Foods' pre-certification motion to dismiss. Whole Foods has limited the scope of its appeal to the district court's decision not to dismiss the claims of the unnamed putative class members. But Whole Foods did not seek to dismiss those claims for lack of personal jurisdiction, *see* ECF No. 30, and they are not yet at issue in this case.

Whole Foods now argues for a rule that would be applied at the pleading stage, based on its assertion (at 25–29) that "[p]rior to class certification, an unnamed class member may be designated as a party for some purposes and not for others." That is not a correct statement of the law. As the Supreme Court has explained, "a nonnamed class member is [not] a party to the class-action litigation *before the class is certified*." *Bayer*, 564 U.S. at 313 (describing any contrary view as "novel" and "surely erroneous"). It is the act of class certification—not the filing of the complaint—that "reifies the unnamed class members and, critically, renders them subject to the

court's power." *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015). Nor does it matter for purposes of this appeal if Whole Foods is right (and it is not) that a federal "court must ultimately have personal jurisdiction over [an unnamed] plaintiff's claim in order to render judgment on that claim." Appellant's Br. 25. Judgment comes at the *end* of a case.[10]

Heeding this rule, "[d]istrict courts nationwide have held that dismissal of absent class members' claims for lack of personal jurisdiction would be premature prior to a motion for class certification." *Weiss v. Grand Campus Living, Inc.*, No. 18-cv-434, 2019 WL 1261405, *2 (S.D. Ind. Mar. 19, 2019); *see, e.g.*, *Suarez v. Cal. Natural Living, Inc.*, No. 17-cv-9847, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ("At present, the potential out-of-state class members are precisely that—potential class members who are not, and may never be, joined in this action. Thus, the Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless

---

[10] Nor should a mandatory pleading-stage rule be adopted for policy reasons, as Whole Foods urges (at 25–28). Rule 23(c)(1)(A) requires that the class-certification decision be made at an "early practicable time," and any discovery relevant to that decision will likely be focused on the question whether Whole Foods has a common companywide policy. So while Whole Foods bemoans the fact that discovery could cover the 27 states in which it operates, that concern is overblown: either there is a corporate policy or there isn't. Whole Foods' proposed approach, moreover, does not solve this concern, but exacerbates it. It could require Whole Foods to respond to discovery requests in up to *27 separate class actions* in *27 different federal courts*. Further, once a controlling decision on the scope of *Bristol-Myers* is issued by this Court, that rule will doubtless shape the scope of permissible discovery in other cases going forward, without the need to create new procedural hurdles at the threshold.

and until [certification is sought of] a class comprising out-of-state class members."); *Jones v. Depuy Synthes Prods., Inc.*, — F.R.D. —, No. 17-cv-1778, 2018 WL 6431013, *9 (N.D. Ala. Nov. 20, 2018) ("Plaintiffs have yet to move for class certification, [so] applying *Bristol-Myers* at this juncture would require the Court to undertake the nearly impossible task of conducting a specific jurisdiction analysis over parties not yet before it."); *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *8 (D.N.J. Apr. 27, 2018) ("[T]o determine whether this Court has specific jurisdiction over Defendant with respect to the claims of the unnamed class members prior to class certification would put the proverbial cart before the horse.").[11] That rule is fully applicable in this case. There are simply no class claim to dismiss at this point.

It is true that at least one district court, before class certification was sought, granted a motion to "strike [a] class definition" from the complaint, on the belief that it lacked personal jurisdiction over "the claims of the unnamed [non-resident] putative class members." *See Mussat v. IQVIA Inc.*, No. 17-C-8841, 2018 WL 5311903, *1

---

[11] *See also Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) ("[The] plaintiff has not yet brought a motion to certify a nationwide class. Until he does so, the [*Bristol-Myers*] issue is not squarely before the Court."); *Gasser v. Kiss My Face, LLC*, No. 17-cv-1675, 2018 WL 4538729, *2 (N.D. Cal. Sept. 21, 2018) ("[T]he Court does not understand how it can lack personal jurisdiction of persons who are not yet (and may never be) parties to this action, that is, the putative class members. . . . [T]he issue of whether Plaintiffs can and/or should represent [out-of-state class members] is an issue to be raised at class certification."); *Biffar v. Pinnacle Foods Grp., LLC*, No. 16-873, 2016 WL 7429130, *6 (S.D. Ill. Dec. 22, 2016) (holding same pre-*Bristol-Myers*).

(N.D. Ill. Oct. 26, 2018). And it is true that some circuits have treated an order striking class allegations as "the functional equivalent of denying a motion to certify the case as a class action" for purposes of Rule 23(f), "which authorizes courts of appeals to review decisions denying or granting class-action certification." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110 & n.2 (4th Cir. 2013); *see also In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002). But Whole Foods did not file a motion to strike, the district court did not grant such relief, and there is no authority for the proposition that a court's pre-certification decision to *decline* to dismiss absent class members' claims is the "functional equivalent" of *granting* a motion to certify a class action. Nor is this a Rule 23(f) appeal, in any event. So the motion-to-strike pathway is entirely irrelevant here.

Once this Court recognizes as much, it has only two options for resolving this appeal: It can affirm the district court's judgment (on any ground offered in this brief). Or it can dismiss the petition as improvidently granted, because the sole issue identified by the district court as warranting an interlocutory appeal is premature (and thus not "controlling" as required by section 1292(b)). *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 867 (2d Cir. 1996) (reconsidering "an earlier decision to permit appeal from an interlocutory order" and dismissing petition as "improvidently granted" to avoid "premature treatment" of personal-jurisdiction question); *Ray v. Edwards*, 725 F.2d 655, 658 n.3 (11th Cir. 1984) ("We are not bound by the [earlier] order of another panel of this court initially exercising its discretion, *see* 28 U.S.C.

§ 1292(b), to allow interlocutory review of this issue. . . . [H]ad the prior panel been aware that interlocutory review of the district court's order would necessitate our rendering an advisory opinion, it would not, and could not, have granted review. Therefore, we now partially vacate [the order granting the petition] as improvidently granted."); *Nickert v. Puget Sound Tug & Barge Co.*, 480 F.2d 1039, 1041 (9th Cir. 1973) ("While the question is an interesting one, which has not been decided by this Circuit Court, the District Court's pre-trial ruling thereon is not the type of order which will support the jurisdiction of this Court on appeal under 28 U.S.C. § 1292(b)" because it "is nothing more nor less than an hypothetical, advisory opinion.").

What this Court should not do is reverse. If it were to reverse, the Court would not actually be reversing the order that forms the basis of this interlocutory appeal. Instead, it would be preemptively reversing an anticipated future class-certification decision—a decision that would come to pass only if (1) the named plaintiffs move to certify a class with non-D.C.-residents, and (2) the district court then finds that Rule 23's requirements are otherwise met, including predominance and superiority, and certifies the class. Issuing an advisory opinion of this sort would not be consistent with the proper role of a federal court in an interlocutory appeal. *See Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 679 (D.C. Cir. 1996) ("Not only judicial economy but the prohibition on advisory opinions counsel against reaching an issue that might be mooted or altered by subsequent district court proceedings.").

## CONCLUSION

The certified order should be affirmed.

Respectfully submitted,

/s/Matthew W.H. Wessler
MATTHEW W.H. WESSLER
JONATHAN E. TAYLOR
DANIEL WILF-TOWNSEND
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington DC 20036
(202) 888-1741
(202) 888-7792
matt@guptawessler.com

SALVATORE J. ZAMBRI
CHRISTOPHER J. REGAN
REGAN ZAMBRI LONG PLLC
1919 M Street, NW, Suite 350
Washington, DC 20036
(202) 463-3030
szambri@reganfirm.com

Counsel for Plaintiffs-Appellees

April 2, 2019

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)**

I hereby certify that my word processing program, Microsoft Word, counted 10,697 words in the foregoing brief, exclusive of the portions excluded by Rule 32(f). The document also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface in 14-point Baskerville font.

*/s/ Matthew W.H. Wessler*
Matthew W.H. Wessler

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the D.C. Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Matthew W.H. Wessler*
Matthew W.H. Wessler